The first argument is in Connecticut General Life Insurance v. BioHealth Labs. Let me just make sure counsel are here. We've got Mr. Kang for the appellant. Yes, Your Honor. Good morning. And you can see and hear us okay, Mr. Kang? Yes, sir. Great. And you've reserved two minutes for rebuttal. And then Mr. Hare for the appellee. Yes, Your Honor. It's good morning. I hear you loud and clear. Thank you. Great. You'll have 10 minutes after Mr. Kang wraps up. Thank you, Judge Sullivan. Thank you. All right. Mr. Kang, you may proceed. Thank you very much. Good morning, Your Honors. May it please the court. Thank you for your time today. And I appreciate the courtroom staff getting us all situated here. My name is Edward Kang and I represent the appellants. Your Honors, this case presents the question of whether the district court erred in dismissing Cigna's causes of action as time barred. We submit that the Cigna's equitable claims, which include unjust enrichment and ERISA, were not time barred because under Connecticut law, equitable claims are not subject to a rigid application of statute limitations, but are instead subject to a fact-based determination under the doctrine of latches. Because of that, dismissal of Cigna's equitable claims at the 12th v. 6th stage, in our view, was improper. Now, the appellees in turn argue for a different interpretation of Connecticut law, that a plaintiff's equitable claims are time barred if they are based on the same facts as its time barred legal claims. In our view, the labs are incorrect. First off, the Connecticut Supreme Court's 2019 decision in reclaimant is clear. The timeliness of equitable claims is not subject to a statute of limitations, but rather to the equitable doctrine of latches. Reclaimant did not limit its holding in any way, and so we submit that that holding controls here. Now, the appellees, Your Honors, offer up a different interpretation, that reclaimant somehow applies only to purely equitable proceedings, and that in cases like this, where a party can seek both legal and equitable relief, or has pleaded the same facts for both certain underwriters should apply instead. Now, there are a number of reasons, Your Honors, why we believe that interpretation does not withstand scrutiny, which we've discussed in our papers, and I'd be happy to elaborate on here. But even if we were to assume the appellee's interpretation to be correct, and assume that certain underwriters controls, Cigna's equitable claims would still not be time barred, even under their rule, because the equitable and legal claims are based on different facts. Connecticut courts have made clear, Your Honors, that where a plaintiff's legal and equitable claims depend on proof of different facts, the statute of limitations applicable to the legal claims do not time bar the plaintiff's equitable claims. That applies. Yes, Your Honor. Mr. King, if I might, on that particular point, didn't certain underwriters do exactly what you would have us not do here? In other words, didn't it apply the statute of limitations period for a conversion claim to unjust enrichment? Your Honor, yes, it did. But again, we believe that certain underwriters has been overruled by reclaimant. Reclaimant, again, said that all equitable claims are to be evaluated by the doctrine of latches, not by a statute of limitations, period, full stop. Second, Your Honor, the distinction between certain underwriters and that here is, again, the factual distinctions, the factual bases for Cigna's legal claims, which are the fraud and negligence, and its equitable claims are different. Cigna's equitable claims, Your Honor, are based and necessitate an evaluation of Cigna's planned terms. The fraud claims, the tort claims do not. Let me put it another way. Cigna's unjust enrichment claims could survive and we could still prevail even if we lost on all of our legal claims because the equitable claims do not require proof of mens rea. We don't need to prove that the labs acted with fraudulent intent, that they acted with negligence, or any intent for that matter, as long as they submitted claims and were paid for claims that were not benefits, and that that was to Cigna's detriment. Those are the three elements for unjust enrichment. So we believe that... Excuse me, Counselor. I think you're still relying on the planned terms, and therefore I think you're still relying upon contract terms, and therefore I think those claims are still relying on law rather than equity or equity in addition to law. Your Honor, but our legal claims here were for fraud, negligent misrepresentation, conversion, and civil theft. And in that instance, Your Honor, on the legal claims that we've cited here, those would not depend on the planned terms because the bases for those legal claims are whether or not the labs submitted, made intentionally or in some instances, negligent false misrepresentations when they submitted claims to Cigna. That could be decided independently regardless of what the planned terms say. Let me give you another example. The fundamental instance here of what we're relying upon in terms of the planned terms is this concept of be forgiven. Be forgiven means essentially that, in our view, the labs submitted claims while not billing patients cost share obligations. They could have done that, Your Honor, totally innocently, and the claims could have been completely done without any type of fraudulent or negligent intent. But if those claims were submitted, and in fact the labs, for whatever reason, did not bill the patients their cost share obligations, then in Cigna's view, that is in violation of the planned terms. And therefore, if the labs, despite our, as we did, as Cigna asked for those monies back, if they retained it, then that would support a claim for unjust enrichment even though it might not support a claim for fraud, conversion, theft, or negligent misrepresentation. And that, to go back to Judge Brown's question, is the fundamental distinction between, the factual distinction between our case and certain others. So, I wanted to talk about tolling. You've only got about a minute and a half left, but I assume you want to get there, right? Yes, Your Honor, we do. Obviously, the equitable, the distinction between equitable and legal claims apply solely with regards to our equitable claims. We believe that all of the claims, both legal and equitable, were tolled. And here, I want to make the point, Your Honors, that we're not relying upon equitable tolling. We are claiming that the claims were actually tolled during the pendency of the two years and one month that the lab's claims were pending in Florida. We believe that the current claims arise out of the same transaction or occurrence that was the subject matter of the lab's complaint in Florida. Therefore, they are compulsory. And in fact, if we had tried to bring these claims while the Florida action was pending, it would have been dismissed on grounds that they were compulsory to the Florida case. Because, in our view, these claims were tolled during the two years and one month that those claims were pending, we believe that all of Cigna's claims, legal and equitable, have been timely filed within the three years. But for Cigna, are we looking at, whose law are we looking at? Is that federal common law? Is that, is that Connecticut? Yes, federal common law. And actually, I'm glad Your Honor mentioned that because we think one of the problems in the district court's opinion was Judge Hall correctly noted, perhaps, that state law, Connecticut state law claims, law applies to analysis of the timeliness of and the tolling of the state law claims. She never got to the question of the federal claims. So at a minimum, as to the ERISA and the declaratory judgment claim, there was no analysis that was done performed by the district court. And at the very least, we believe that that was error. We believe that the federal tolling principles, had that correctly been applied, would, in fact, have actually tolled Cigna's federal claims in this case. So I see you're out of time, but let me just see if my colleagues have any questions or any additional questions. Judge Jacobs or Judge on the tolling, just very quickly, was there anything that prevented you from filing these claims? I mean, in some ways you try to cast them as compulsory counterclaims in the parallel action, but you could have filed them in a separate suit anytime you wanted. Isn't that fair? Well, if we had filed them in a separate suit while the Florida actions, Florida action was pending, Your Honor, we believe it would have been dismissed as a compulsory counterclaim. You are correct. There isn't anything that would have necessarily prevented us from filing it after the 11th Circuit rendered its decision. But here, again, that analysis may be relevant if we were relying upon equitable tolling arguments. The question as to whether or not we delayed it and sort of should have brought it in time, but we're not relying upon equitable tolling. We're saying that our claims were actually told. Our position is because they were actually told, it doesn't matter as long as we file it within the time of the three years period, including the tolling time period, we believe that we have. If you, I'm sorry, I said I had a number of questions, but Judge Brown's question poses another one to me, and that is, why couldn't you have just gone to your adversary and said, please toll the statute of limitations? And if they said no, or we're planning to invoke it, what court would have dismissed your claims if you filed them? That's, again, certainly correct, Your Honor, and I would submit that that would, again, go into the analysis of whether or not Cigna's conduct and the failure to take some of those actions would have been relevant for an analysis under equitable tolling. But again, in our view, these claims have been actually told, and therefore, that is not required. Are you taking the position then after the 11th Circuit ruled in September of 2017 that you had a full three years to file this lawsuit? Yes, if we use the time period that the district judge here applied, where the tolling period began on August 17th of 2015, our view is that the three-year clock paused between that period and September 2017. So yes, Your Honor, we would have believed, our position is that we would have then had three years from September 2017 to file. We filed in, I believe, August 2019, so we were well within the three-year limitations period. So even if the tolling worked in a different way, you still would have had one year after the 11th Circuit ruled to file your claims. That is correct, yes, Your Honor. Thank you. Thank you very much, Mr. Kang. You've got two minutes for rebuttal, but we'll now hear from Mr. Hare for 10 minutes. Thank you. May it please the Court, Scott Hare representing the laboratories, and I'd like to join my friend, Mr. Kang, in thanking the Court for his time today. Let me begin with the questions that Judge Brown and Judge Jacobs raised at the end of this argument. And Judge Brown is exactly right. There is nothing that stopped Cigna from filing what it purports to be its own claims at any time. Contrary to Mr. Kang's argument that doing so would have resulted in a dismissal, to the contrary, it was free at any point simply to file claims that it had identified as of August of 2015. And in fact, the lower court made that same observation, and indeed, cites to a Southern District of New York case, Peekskill City School District against Colonial Surety, in which the Southern District of New York lays out exactly that dismissal. The best practice would be for the defendant in the original case to file its own claims as a separate lawsuit. Judge Brown is correct. Cigna could have done this at any time, and it simply chose not to. Judge Jacobs is correct that it could have worn both belts and suspenders by asking for a tolling with respect to what it identified as its alleged claims. There are other reasons why the compulsory counterclaim argument is no panacea for Cigna, starting with the fact that these are not counterclaims. These are claims brought in their own right and in the first instance. Add to that, Your Honors, that in Connecticut, as the Armour decision teaches, there is no such thing as a compulsory counterclaim, nor does a counterclaim relate back to the date of filing of the initial complaint. There's no tolling. Counsel, let me ask you this. I mean, if one party seeks a declaratory judgment that they don't owe a sum of money, and the other party wants to collect that sum of money, why isn't that a counterclaim? That's exactly the scenario in the Peekskill case, relied on by the court below. In that case, whether it could be brought at an appropriate time as a counterclaim does not preclude the independent cause of action for declaratory judgment or other relief. In fact, if a party wants to preserve its own claims during the pendency of its motion to dismiss and potentially appeals from a motion to dismiss, there's a simple way to do that. The simple way to do that is simply by filing those claims. Cigna chose not to do that. There's a backup strategy. Judge Jacobs, you're correct. Get a tolling agreement. Cigna chose not to do that. There's another hurdle that Cigna cannot overcome with respect to its tolling argument, and that is it has sued parties here who were simply not litigants in the Florida litigation. So the tolling argument doesn't get it anywhere and certainly doesn't get it far enough. Your Honors, I would like to return to what I think is the fundamental issue in this case, and that is this is a certain underwriter's case. This is not a reclaimant case, as the court below found. Exactly as in this case, certain underwriters brought both legal and equitable claims were predicated on precisely the same facts and included, like this case, equitable claims for statutory theft, conversion, and unjust enrichment. Just like this case, the plaintiff and certain underwriters waited more than four years after the date it knew or should have known of the alleged fraud before it filed its claims. And as the court below found, as just in this case, where both equitable and legal claims arise from the same underlying predicate facts, the equitable claims are governed by that same statute of limitations. The holding in certain underwriters is consistent with long precedent in applying the statute of limitations to the overruled certain underwriters in the reclaimant decision. And it did no such thing. The very first sentence of reclaimant indicates that the court is addressing a narrow issue relating to choice of law as between Delaware and Connecticut. I would submit that the highest court of Connecticut does not overrule sub silentio decades of precedent in deciding a narrow issue on choice of law. Reclaimant is abundantly distinguishable from our case on the facts. In reclaimant, the plaintiff asserted a single cause of action for unjust enrichment. That was a clawback case arising from a mistaken but innocent alleged overpayment to members of a partnership. There was a council following up on that. If your adversary had filed a claims that only sounded in equity, wouldn't reclaimant provide that the latches is the only measure of lateness and that the statute of limitations doesn't apply? The question is not only what claims were pled. And in this case, Signet didn't choose to do that. The question is, is what claim? That's why it's a hypothetical question. Understood. And the case law tells us that the deciding factor is the claims that were pled or could have been pled uniquely in reclaimant because of the innocent basis for the alleged overpayment. There was no tort claim available to the plaintiff. The only available claim, whatever it chose to plead, the only available claim was the equitable claim for unjust enrichment. There was no hint of misconduct. That's not the case here. And in fact, in this case, Signet alleges at length that the case and all counts in the case are predicated on fraud. I would call the court's attention to paragraph one on page one of Signet's own complaint, which is found at page eight of the joint appendix. In a section and captioned nature of the action, Signet alleges that this is a case arising from a fraudulent billing scheme. Docket number 11 before this court, Signet's pre-argument statement at page three identifies the nature of the case being a fraudulent billing scheme. Signet's opening brief at page six references a scheme to defraud. And more importantly, your honors, every count in the seven count complaint is expressly predicated on alleged affirmative fraud. And we see this allegation given a lengthy statement in paragraph 126 of the complaint, which is found in count one, a cause of action for fraud, and is expressly incorporated in each of the remaining seven counts of the complaint. Now, can I ask a question? The heuristic claims, you're not required to be fraud to the heuristic claims, right? You, in other circumstances, you would not be required to do so. In this circumstance, Signet did. But wait, I mean, so it seems to me that on the heuristic claims, Signet wouldn't have to prove fraud, would they? They just have to prove that the elements of an heuristic violation took place. That doesn't include fraud. Again, that's not the claim that Signet has brought, but were it to bring so, were it to bring that case, the question would remain, can this case, including the heuristic account, be uncoupled from the remaining allegations that were pled or were available to Signet? And Mr. Kang this morning argued that the ERISA claim is entirely different and depends on entirely separate facts. And he references the plan terms. The problem for him is that's not the Signet file. Signet filed a case, including its ERISA claim, that points strictly and specifically to the alleged fraud committed by the latter. So if this went to a jury, you would say that the jury would be instructed that to find an ERISA violation, they would have to find fraud? No. If the case went to a jury on solely an ERISA account, and as in reclaimant, Signet were proving an innocent overpayment, it would have solely that equitable claim. But again, that's not the claim that it brought. And its ERISA claim, like all of its other accounts, is permeated with allegations of express wrongdoing and fraud by the labs. In choosing to bring that claim, Signet has coupled itself to the three-year statute set forth in certain underwriters and all of its prior case law. If I might add one further point, Your Honors, I see that my time is running. In Connecticut, the act of overruling a prior decision has to be explicit, not implicit or sub silentio. And I can report to the court, after all of the briefing was completed in this case, the Connecticut courts continued to look at this issue. And most recently in a case called Ardagi, which is at 2020 Westlaw 8024813, a Connecticut trial court, admittedly in an unpublished decision, applied a legal statute of limitations to equitable claims after the reclaimant decision. That's the case that is before us today. Thank you, Your Honors, and thank you for the added time. Okay, thank you. Mr. Kang, you've got two minutes of rebuttal. Thank you, Your Honor. Let me just start backwards. Your Honor, first off, with your question about whether or not ERISA requires fraud, that's exactly our point, Your Honor. Certainly, we've pleaded for fraud. And certainly, if we establish fraud, that would support all of the causes of action. But that's not necessary to prove that ERISA or the unjust enrichment claim. And in fact, that's exactly why the Connecticut court in the Lanthier decision back in 2017, which we cited to, makes this distinction. It's not just about what the party alleges, but it's about what facts need to be proven in order to establish the case. And in that court, in that case, the court stated at page five, however, the focus necessarily must be on the facts provable or proven rather than simple allegations or else the outcome is likely to be dictated by the precision of pleading practice rather than substance. So that goes, in my view, exactly to the point that you were making, Judge Sullivan. Let me talk briefly about the lab's distinction about certain underwriters and reclaiming. They say, well, it's not just what claims are pled, but about what claims could have been pled. And in this instance, in this case, Your Honor, we believe that the plaintiff in reclaiming could have asserted legal claims on the same facts as its equitable claims. Mr. Harris says it was purely innocent, so no tort claim would have been available. That's nowhere in the opinion. Anything about innocence, I don't see that anywhere in the opinion. It's clear that in that case, there was a corporation that was the assignee of a limited partnership. The defendants were former partners in the LP. They withdrew their investments. There was then a clawback on allegations that there was an overpayment. There could have been a claim for negligence, conversions, breach of fiduciary duty. And in any event, even if they couldn't, reclaiming would have had the rule that Mr. Harris is advancing. They would have analyzed it at the very least. They would have said, well, let's look at what the claims that could have been brought here. Would there be legal claims available? They did nothing of that sort, which it indicates to us this Connecticut Supreme Court just simply didn't accept Mr. Harris' interpretation. Can I ask you a question, Mr. Kang? And you're out of time. This might be the last one. Yes, Your Honor. Would you characterize reclaimment as overruling certain underwriters or clarifying? Your Honor, I think it would be viewed as, well, I think in the sense that it conflicts. In our view, it necessarily conflicts with certain underwriters. The two opinions cannot stand together on this issue of whether or not legal and equitable claims, whether equitable claims can also be time-barred. Because in our view, reclaimment said what it said, full stop. Equitable claims are to be evaluated through the doctrine of latches and not by the statute of limitations. So on that point, Your Honor, we believe they can't be consistent. And as a result, the later opinion, and we've cited some case law to the extent of what it means to overrule by is when two opinions cannot be read consistently with each other. We believe that doctrine applies here. All right. Thank you, Judge Jacobs, Judge Brown. Any further questions? Okay. Thank you, counsel. We will reserve well argued.  Thank you, Your Honors.